**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cv-60535-BLOOM/Valle**

HUMBERTO PELLEGRINO and
PEDRO CLAVERIA,

      Plaintiffs,

v.

GERALD WENGERT, et al.,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon the Motion for Summary Judgment, ECF No. [119] (the "Motion"), filed by Defendant Scott Israel, in his capacity as Sheriff of Broward County, Florida ("BSO"), with respect to Plaintiffs Humberto Pellegrino and Pedro Claveria's ("Plaintiffs") Second Amended Complaint, ECF No. [75] ("SAC"). The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, the Court grants the Motion.

### I. BACKGROUND

This action centers on Plaintiffs' allegations that BSO police officers used excessive force against them in investigating a potential burglary. Familiarity with the procedural and factual background in this matter is assumed. *See Pellegrino v. Wengert*, No. 15-CIV-60535, 2015 WL 4065376, at *1 (S.D. Fla. July 2, 2015). Plaintiffs allege that BSO Deputies released and instructed a police dog to attack Plaintiffs for no apparent reason and without provocation. Plaintiffs Pellegrino and Claveria each assert an identical claim against BSO, under 42 U.S.C. §

1983 (Counts XIII and XIV of the SAC). The Motion targets only those two claims. Deputies Gerald Wengert, Davis Acevedo, and Leonard Smith are Defendants in this action but have made no submission in connection with the instant Motion.

Plaintiffs allege that the deputies' conduct constitutes excessive force, and that their conduct was implemented or ratified by BSO or effected pursuant to BSO custom or practice. SAC ¶¶ 183, 199. Further, Plaintiffs allege that BSO has "implemented a policy of inadequate investigation that allows an environment for the use of unreasonable force because officers may believe they will not be held accountable for the consequences of using excessive force." *Id.* ¶¶ 185, 189. In support of their theory of causation and liability, Plaintiffs detail a long series of alleged misconduct by Deputy Wengert, followed by effective inaction by BSO, including several separate incidents involving Wengert's alleged inappropriate conduct and use of excessive force between 2006 and 2012:

- In February 2006, Wengert threw to the ground a suspect who had surrendered and lay prone and subdued, commanded his dog to engage in a "deadly force" bite, and kicked the man in his face and mouth. *Id.* ¶ 186.a.

- In May 2006, Wengert twice slammed onto a police vehicle a man who had not committed any crime or infraction, and threatened to kill the man while holding him in a headlock. *Id.* ¶ 186.c.

- In May 2008, Wengert discharged multiple rounds from his weapon at a vehicle containing several suspects while investigating a potential burglary. *Id.* ¶ 186.d.

- In March 2010, Wengert taunted a man at a gas station, pulled the man over without any cause a short distance away after the man left the station, yanked the man from his

vehicle, and smashed the man's face into the car's door frame. *Id.* ¶ 186.k. BSO conducted no investigation into Wengert's use of excessive force. *Id.*

- In December 2012, Wengert engaged in an improper and retaliatory traffic stop of a teenager who had driven imprudently but inadvertently in close proximity to Wengert's girlfriend. *Id.* ¶ 186.e. The teenager had reversed his car on a relatively major street and nearly hit the girlfriend's car. *Id.* She followed the teen to a restaurant and phoned Wengert. *Id.* Wengert pulled over the teen's car as it left the restaurant. *Id.* In abrogation of BSO protocol, Wengert did not call in a traffic violation or traffic stop, did not look up the vehicle's tag, did not request the driver's license or his vehicle registration, did not notify the teen of the reason for the traffic stop, and did not ask the teen to step out of his vehicle. *Id.* Rather, Wengert forced the car door open and pulled the driver from the car. He punched the teen, forced him toward his police vehicle, opened that vehicle's door, and set his police dog on the teen. *Id.* The victim's father lodged a formal complaint with BSO; Wengert was suspended from June 14, 2012 to August 16, 2013; and a grand jury indicted Wengert on criminal charges for his conduct. *Id.* Wengert was acquitted. Despite the higher burden of proof required for criminal conviction, BSO did no investigation of its own, did not levy on Wengert any punishment, and paid Wengert over $63,000 in back-pay after his acquittal. *Id.*

Plaintiffs also cite to an incident involving BSO Detective Jeffrey Kogan, who witnessed and reported excessive force by a Fort Lauderdale Police Department K-9 unit and was purportedly demoted as a result. SAC ¶¶ 189-92, 205-08; *see also* Resp. at 7 (citing Kogan Depo., ECF No. [130-3]). According to Detective Kogan, he witnessed a K-9 officer deploy his dog on a murder suspect while the suspect was sitting on the ground, apprehended, with his

hands secured behind his back. Kogan Depo. at 8-11. Detective Kogan reported the incident to his supervisors, the prosecutor, and ultimately the Florida Department of Law Enforcement. *Id.* at 11-14. Detective Kogan alleges that, as a result of reporting the alleged excessive force, he was demoted. *Id.* at 29-33. Detective Kogan filed a whistleblower action against BSO and received a jury verdict in his favor. *Id.* at 26. Detective Kogan, however, has not yet been placed back as detective. *Id.* at 36.

In support of its Motion, BSO provides evidence of its various accreditations, including by the Commission on Accreditation for Law Enforcement Agencies, Inc. ("CALEA"), which is an outside group of trained assessors who have signed off on BSO's Use of Force Policy as "compliant" with CALEA and constitutional standards. *See* Defendant BSO's Statement of Facts, ECF No. [119] at 3-9 ("Def. Stat. Fact.") ¶ 3, 6, 9, 12 ("BSO has over 16 accreditations . . . ."). BSO also outlines its policy procedures surrounding use of force and the employee disciplinary process. Plaintiffs' expert, Dr. George Kirkham, testified in his deposition that BSO's written policies and procedures are standard and "good policies." Kirkham Depo., ECF No. [121-16] at 149-50. BSO policy mandates that every time a deputy uses force, that deputy must fill out the appropriate use of force form and the matter is sent to a supervisor to complete a review and then to Internal Affairs for review. Def. Stat. Fact ¶ 14. The BSO Internal Affairs Division has in place an early warning system to flag potential problems, which is triggered if a deputy has three incidents or complaints within three months or five within a calendar year. *Id.* ¶ 15. Once an Internal Affairs investigation is completed, it is then submitted to the Professional Standards Committee ("PSC"), which consists of eleven members, including two administrative members from the Department of Law Enforcement, two administrative members from the Department of Detention and Community Control, two administrative members from

4

unrepresented departments selected by the Sheriff or designee, one employee union representative, and four non-employee members (residents) selected by the Sheriff. *Id.* ¶ 17; Sheriff's Policy Manual, ECF No. [121-14] at 20. The PSC meets once a month in a formal setting to review, vote, and make recommendations concerning investigations presented by the BSO Internal Affairs Division. Def. Stat. Fact ¶ 17. Ultimately, the PSC votes to find the alleged policy violation sustained, not sustained, exonerated, or unfounded, and, if sustained, to consider and recommend discipline.[1] *Id.* ¶ 18. Plaintiffs' expert, Dr. Kirkham, testified that he does not believe the PSC is corrupt. *See* Kirkham Depo. at 219: 18-220:4.

BSO asserts that "[a]t no time has the [PSC] ever determined Deputy Wengert to have used excessive force, violated policy, nor has any court of competent jurisdiction ever found that Deputy Wengert's actions as a law enforcement officer violated the law." Def. Stat. Fact ¶ 22 (citing Wengert Internal Affairs case history, ECF No. [122-5]). Plaintiffs dispute this assertion, but have provided no evidence, argument, or other support in contravention of BSO's assertion and the case history report. *See* Resp., ECF No. [130] at 2 ("Plaintiff controverts the following paragraphs alleged in Defendant's statement of material facts . . . 22. Disputed.").

Major Angelo Cedeno, head of BSO Internal Affairs Department, testified as BSO's Rule 30(b)(6) corporate representative in this matter and provided testimony as to BSO's actions regarding the incidences involving Wengert. Def. Stat. Fact. ¶ 19-21 (citing Cedeno Depo., ECF No. [121-17]). Major Cedeno testified as to the investigator assignments, each investigatory step

---

[1] "Upon review of the investigation, PSC renders one of the following recommendations by majority vote:
1. Sustained: Evidence sufficient to prove allegations.
2. Not Sustained: Insufficient evidence available to prove or disprove allegations.
3. Exonerated: Alleged actions occurred, but were lawful and proper.
4. Unfounded: Allegations are false or not supported by facts.
5. Defer Case for More Information: Used if PSC determines there is insufficient factual evidence to render a decision."

Sheriff's Policy Manual, Section 9.1.5, ECF No. [121-14] at 21.

taken, and the ultimate determinations by the PSC with regard to the complaints made against Wengert, including those set forth in the Second Amended Complaint:

- The February 2006 dog bite complaint was investigated by Internal Affairs and exonerated by the PSC. *See* Cedeno Depo. 7-11, 108-09.

- The May 2006 complaint alleging that Wengert slammed an individual onto a car was investigated and determined unfounded by the PSC. *See* Cedeno Depo. at 22-26, 110-11.

- The May 2008 incident in which Wengert discharged his firearm while investigating a potential burglary was investigated by the Shooting Review Board and the firearm use was deemed proper. *See* Cedeno Depo. at 33-35, 40.

- No citizen complaint was made with regard to the March 2010 incident in which Wengert is alleged to have smashed a man's face into a car's door frame. *See* Cedeno Depo. at 52-57. A suit was filed in this District and summary judgment was granted in favor of BSO with regard to the plaintiffs' § 1983 claim against the Sheriff for deliberate indifference. *See Buckler v. Israel*, 13-62074-CIV, slip op. (S.D. Fla. Jan. 28, 2016).

- The December 2012 canine use of force complaint and State Attorney investigation in which Wengert was arrested and criminally charged resulted in an acquittal on all criminal charges. Wengert was suspended without pay from June 14, 2012 to August 16, 2013 while the investigation and trial were in progress. Internal Affairs investigated the case and the PSC found the falsifying records claim not sustained, the battery charge exonerated, and the official reports/truthfulness and conduct unbecoming not sustained. *See* Cedeno Depo. at 59-67, 82.

*See* Def. Stat. Fact. ¶ 21; *see also* Resp. at 2 (not disputing Def. Stat. Fact. ¶ 21).

Plaintiffs allege that BSO's failure to terminate Wengert for his misconduct exhibits their ratification of the use of excessive and unreasonable force by BSO officers and signals to all BSO officers that such conduct is accepted and will not result in reprimand or punishment. *Id.* ¶¶ 193-95. Plaintiffs allege that violations of their constitutional rights and injuries resulted from BSO's policies or customs. *Id.* ¶¶ 196-97.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor."). However, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party. S.D. Fla. L. R. 56.1(b).

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern*

*Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)). The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence in the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### III. DISCUSSION

**A.  Municipal Liability Under Section 1983 (*Monell* Claim)**

"When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents . . . ." *Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). According to the Supreme Court, section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). Indeed, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "[I]n order to be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue . . . ." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citation omitted); *see also Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." (emphasis in original)). Thus, the constitutional deprivation must come at the hands of an official policy or "custom." *See Monell*, 426 U.S. at 690 (stating that local governing bodies may be subject to liability under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Id.*

"A plaintiff . . . has two methods by which to establish a [municipal actor's] policy:

identify either (1) an officially promulgated [] policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval."  *Depew*, 787 F.2d at 1499; *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n. 6); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) ("[T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice. . . .").

"[A] persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) ("A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference toward the police misconduct.") (citation omitted). A plaintiff advancing a ratification theory in support of his *Monell* claim must still establish a "widespread practice" of the relevant constitutional violations. *See*, *e.g.*, *Davis v. City of Leesburg*, 2014 WL 4926143, at *27 (M.D. Fla. Sept. 30, 2014); *Windham v. City of Fairhope, Ala.*, 20 F. Supp. 3d 1323, 1343 (S.D. Ala. 2014), aff'd, 597 F. App'x 1068 (11th Cir. 2015).  The prior conduct must also be

sufficiently similar. *See Threats v. City of Bessemer*, 2013 WL 2338701, at \*5 (N.D. Ala. Apr. 29, 2013) (regarding ratification, "the prior of violations must have been sufficiently similar in nature to the violation in the plaintiff's case") (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)); *Gainor v. Douglas Cty., Georgia*, 59 F. Supp. 2d 1259, 1292 (N.D. Ga. 1998) (past action must be similar to illustrate ratification); *see also Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) ("Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim.") (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998)). Further, "[f]or plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory . . . they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis . . . ." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1175 n. 12 (11th Cir.2001)). Finally, "[a] § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1165 (11th Cir. 2005); *see also*, *e.g.*, *Lewis v. Wilcox*, 2007 WL 3102189, at \*10 (M.D. Ga. Oct. 23, 2007) ("To prevail under [a ratification] theory, a plaintiff must demonstrate that a policy or custom of the governmental entity caused the plaintiff to suffer a constitutional deprivation."); *McElroy v. City of Birmingham, Ala.*, 903 F. Supp. 2d 1228, 1251 (N.D. Ala. 2012) ("Although a municipality may be liable under this 'policy or custom' theory, there must be a causal link between the constitutional violations and the municipality's actual policies or customs.") (citing *Monell,* 436 U.S. at 694).

### B. Adverse Inferences

Defendants Wengert and Acevedo are under investigation by the State Attorney's Office and have invoked their Fifth Amendment right to silence in this case.[2] Plaintiffs maintain that Defendant Wengert repeatedly asserted this right throughout his deposition testimony, including when asked about prior allegations of excessive force against him. Plaintiffs, therefore, request the Court to draw two adverse inferences, adding to the weight of Plaintiffs' evidence. *See* Resp., ECF No. [130] at 5 (citing *In re Neves, AP* 10-02122-LMI, 2014 WL 7070938, at *4-5 (Bankr. S.D. Fla. Dec. 11, 2014)). Plaintiffs request adverse inferences with regard to: (1) "BSO's failure to terminate or even discipline Deputy Wengert"; and (2) "BSO's practice of punishing whistleblowers of excessive force signaled to Defendant[] Wengert that such conduct is accepted—indeed encouraged—and will not result in reprimand or punishment." *Id.* at 5-6.

"[T]he trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds." *United States v. Two Parcels of Real Property Located in Russell County, Alabama,* 92 F.3d 1123, 1129 (11th Cir. 1996). However, "[t]here is an exception to this rule when a claimant in the civil case is also a defendant in the criminal case and is forced to choose between waiving the privilege and losing the case on summary judgment." *Id.* As the Court previously noted, Defendants are not defendants in a criminal case, but under investigation by the State Attorney's Office. *See* ECF No. [87]. "The courts consistently have held that the Fifth Amendment privilege may be used only as a shield and not

---

[2] On September 24, 2015, both Wengert and Acevedo received a letter from the Assistant State Attorney in Charge of Special Prosecutions and Public Corruption Unit informing each deputy that he is "the subject of an investigation involving felony battery/excessive use of force." This Court denied Wengert and Acevedo's Motion to Stay Case and their request for a protective order as to Wengert and Acevedo's depositions and further discovery. *See Pellegrino v. Wengert*, No. 15-CIV-60535, 2015 WL 7760991 (S.D. Fla. Dec. 1, 2015).

as a sword that frees a claimant from adducing proof in support of his burden." *S.E.C. v. Monterosso*, 746 F. Supp. 2d 1253, 1261 (S.D. Fla. 2010) (citing *United States v. One Parcel of Real Property commonly known as 901 N.E. Lakewood Drive, Newport, Oregon,* 780 F. Supp. 715, 721 (D. Or. 1991)). "Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection." *Id.* (citing *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 190 (3d Cir. 1994)).

### 1. Failure to Discipline or Terminate

Plaintiffs have not pointed to specific discovery that they were unable to obtain as a result of Defendant Wengert's invocation of the Fifth Amendment throughout his deposition or how his assertion of these rights has created prejudice to Plaintiffs. Defendant Wengert asserted his Fifth Amendment rights when asked about past incidences involving Wengert alleged by Plaintiffs in the SAC. *See* Wengert Depo., ECF No. [130-1] at 61:7-17; *see also id.* at 65:10-20 (Q. "Didn't these incidents that are in these paragraphs . . . of this complaint, make it clear to you that you could commit excessive force with impunity from your department?" A. "Same [invoking Fifth Amendment]"). However, Plaintiffs deposed Major Cedeno, BSO's representative from the Internal Affairs Division, to obtain BSO's position on this matter. *See* Cedeno Depos., ECF Nos. [130-5] and [130-6]. Indeed, Wengert himself stated during his deposition that he did not believe he should be fired for anything, *see* Wengert Depo. at 78:1-4, and that he does not know the standards under which BSO may punish an employee or how internal affairs operates. *See id.* at 85-88. To the extent Plaintiffs required further information regarding the incidences, Plaintiffs were free to, but did not, seek discovery from the individuals who filed complaints or BSO employees involved in the investigations and disciplinary processes.

"[A] motion for summary judgment cannot be granted on an adverse inference alone; rather, the inference must be weighed with other evidence in the matter in determining whether genuine issues of fact exist." *Monterosso*, 746 F. Supp. 2d at 1261. Even if the Court were to apply an adverse inference as a result of Defendant Wengert's refusal to testify on Fifth Amendment grounds with regard to the past incidents alleged, that inference would not overcome the deficiencies in Plaintiffs' *Monell* claims identified herein.

### 2. Punishing Whistleblowers

Plaintiffs similarly fail to demonstrate they were unable to obtain discovery with regard to the whistleblower case involving BSO Detective Jeffrey Kogan. Indeed, Plaintiffs deposed Mr. Kogan himself. *See* Kogan Depo., ECF No. [130-3]. It appears that Plaintiffs take issue with the fact that Wengert refused to answer a question regarding his knowledge or awareness of the whistleblower incident. *See* Wengert Depo. at 68:10-19 (Q. "Even if you didn't, Deputy Wengert, even if you knew nothing about [the Kogan whistleblower case], I'm asking you, let's say that's true, entirely true, I tell you that it is but you don't have to believe me, let's say it's a hypothetical, can you think of a single hypothetical example that sends a worse message to deputies handling K-9?" Mr. Schwartzreich: "Based upon mens rea that is required in any criminal prosecution, I am advising my client to take the Fifth."). Plaintiffs themselves, however, concede that proof of the Defendants' knowledge is not itself dispositive. *See* Resp. at 8, n. 2. The Court finds that Plaintiffs have not sufficiently demonstrated that the circumstances of the case warrant the imposition of an adverse inference with regard to any purported incidences of BSO's punishment of whistleblowers.

### C. *Monell* Claim – Ratification of Misconduct

BSO argues that summary judgment should be granted in its favor because BSO maintains and has put in place mechanisms to review, revise, adopt, and implement constitutional policies that conform to accreditation standards, early warning systems, and use of force documentation and review, and maintains multiple separate departments all designed to evaluate, review, audit, and enforce policy, including the use of force. BSO also maintains that (1) the investigations surrounding Wengert were adequate; (2) there has never been any sustained policy violations determined through the PSC against Wengert to trigger discipline; (3) there is no evidence of wide-spread unconstitutional practices; and (4) there is no evidence of unconstitutional practice directly attributable to the sheriff as policymaker to form the necessary causal link through the alleged failure to discipline one singular employee.

Plaintiffs counter that they take no issue with BSO's written policies or its investigations into the alleged incidences involving Wengert, but it is BSO's *unwritten* policies that serve to ratify Wengert's alleged bad conduct. Plaintiffs argue that the investigations into Wengert were indeed adequate but that they mandated the violations be sustained and Wengert be fired—BSO, however, was "too apathetic" to do so.

In support of their ratification argument, Plaintiffs cite to a number of complaints and incidences involving Wengert between 2006 and 2012. In order to use prior conduct to demonstrate ratification, "the prior violations must have been sufficiently similar in nature to the violation in the plaintiff's case." *See Threats v. City of Bessemer*, 2013 WL 2338701, at *5 (N.D. Ala. Apr. 29, 2013) (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)); *see also Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) ("Prior incidents also must involve facts

substantially similar to those at hand in order to be relevant to a deliberate-indifference claim.");
*Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998)). The Court, therefore, will only
consider those complaints and incidences in which excessive force was alleged, as listed *supra*.

Plaintiffs use a large portion of their response brief to describe these complaints of
incidences involving Wengert. *See* Resp. at 11-16. Courts, however, have held that "[a] list of
complaints against police officers, without more, is insufficient to create an issue of fact
regarding [a municipality's] policy of inadequately investigating or disciplining its police
officers. Rather, the Plaintiff must present at least some evidence from which a reasonable jury
could infer that the complaints were meritorious." *Ayton v. Orange Cty. Sheriff Dep't*, No. 6:10-
CV-1930-ORL-28, 2012 WL 4711911, at *3 (M.D. Fla. Oct. 3, 2012) (quoting *Simms v. City &
Cty. of Honolulu*, Civ. No. 06–00669 HG–LEK, 2008 WL 3349069, at *8 (D. Haw. Aug. 12,
2008); *accord Strauss v. City of Chicago,* 760 F.2d 765, 769 (7th Cir.1985) (noting that "the
number of complaints filed, without more, indicates nothing" and that "[p]eople may file a
complaint for many reasons, or for no reason at all")). Indeed, "[s]imply dumping several
thousand pages of investigative files on the Court . . . cannot establish a genuine issue of material
fact as to whether excessive force was used in any case, [where] the plaintiffs have offered no
testimony from any complainant or other witness . . . ." *Shehada*, 965 F. Supp. 2d at 1374
(quoting *Ott v. City of Mobile,* 169 F.Supp.2d 1301, 1313 (S.D. Ala. 2001)).

Plaintiffs argue that the fact that Defendant Wengert was "exonerated" from many of the
excessive force complaints alleged against him serves as further evidence of BSO's ratification
of Wengert's alleged misconduct, because the term "exonerated" indicates that the "alleged
actions occurred but were lawful and proper." *See* Section 9.1.5(C) of the Sheriff's Policy
Manual, ECF No. [121-14] at 21. Plaintiffs maintain that "each time Wengert was 'exonerated,'

that necessarily meant that the . . . BSO concurred with the complainant that Deputy Wengert did in fact act in the manner the complainant professed, but that BSO ratified Wengert's conduct as proper." Resp. at 10. In arguing that discipline should have been imposed upon Wengert despite the PSC's findings of "exonerated" or "unsustained," Plaintiffs essentially ask the trier of fact in this case to examine these incidences and reach a conclusion regarding Wengert's culpability that is different from the Internal Affairs investigator and the PSC.

The record evidence submitted by Plaintiffs regarding these incidences, however, consists primarily of BSO Internal Affairs investigative reports. *See* ECF Nos. [130-7] to [130-15]. The Court notes that "[w]hile 'factual findings' in internal affairs reports are generally admissible under an exception to the hearsay rule, Fed. R. Evid. 803(8), summaries of interviews that are contained in those reports are [ ] double hearsay that cannot be admitted at trial or considered on summary judgment." *Shehada*, 965 F. Supp. 2d at 1374 (quoting *Jessup v. Miami–Dade Cty.,* 697 F.Supp.2d 1312, 1322 (S.D. Fla. 2010)). The Court is, therefore, wary to consider the summaries of interviews and witness statements contained within these investigative reports. *See* ECF Nos. [130-7], [130-8], [130-11], [130-12], [130-13], and [130-15]. Plaintiffs have not deposed any complainants, witnesses, or other individuals involved in these incidences or presented any other independent evidence upon which a trier of fact may rely to re-examine the merits of any of these complaints. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (plaintiffs did not demonstrate that past complaints of police misconduct had any merit and that the number of complaints bear no relation to their validity, particularly for officers who patrol a high crime area). As the Eleventh Circuit has held, "[i]t would be perverse to require that courts exclude allegations of past wrongdoing in order to protect the rights of defendants, while at the

same time demanding that police officials give credence to unsubstantiated complaints against individual police officers." *Brooks*, 813 F.2d at 1194.

Further, Plaintiffs have not set forth any allegation, let alone evidence, that the PSC—or any of BSO's investigative or review mechanisms—is flawed or guilty of any impropriety. Plaintiffs have conceded that the investigations into these complaints and incidences were adequate, *see* Resp. at 2, and Plaintiffs' own expert, Dr. George Kirkham, has stated that BSO's written policies and procedures were standard, even "good policies." Kirkham Depo. at 149:6-25. Plaintiffs have not demonstrated, or even alleged, that BSO was unwilling to investigate the incidences or has declined to follow a recommendation of discipline. Nor have Plaintiffs set forth any allegation of impropriety or bias amongst the PSC. Dr. Kirkham stated that he does not believe the PSC is corrupt. *See* Kirkham Depo. at 219:18-220:4. Rather, Plaintiffs, armed only with hearsay accounts, argue that the PSC should have reached a different conclusion regarding these complaints or that BSO should have disciplined Wengert, disregarding the findings of the Internal Affairs Division and the PSC's recommendation, which were reached under a procedure with which Plaintiffs take no issue. The Court agrees with BSO that Plaintiffs' arguments "completely ignore the fact that deputy Sheriffs, like Wengert, have rights that prevent arbitrary and unsubstantiated termination." Mot. at 2.

Plaintiffs also argue that the incident involving Detective Kogan's purported whistleblowing demotion after reporting alleged excessive canine use of force amounts to "the most egregious display of ratification of police misconduct imaginable." Resp. at 6. BSO counters that the Kogan case is not similar and did not involve BSO use of force and that there is no record evidence that anyone actually feared reporting excessive force. BSO maintains that Detective Kogan is indeed on the short list and number "four" to become a sergeant, *see* Kogan

Depo. at 59, and that the Kogan case, ironically, is an example of what happens to an agency if a deputy believes he was unfairly treated in light of perceived arbitrary or unsubstantiated agency discipline.

"[T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice. . . ." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Plaintiffs have failed to do so here. Even if the whistleblowing case is substantially similar to consider as a prior incident and a genuine issue of material fact remains as to whether the case impacted the decisions of any deputy to use excessive force, this alone does not demonstrate that there is a "widespread practice" of ratifying the use of excessive force within BSO. The only record evidence before this Court consists of unsubstantiated complaints against one deputy within a 5,300 person agency and one detective's successful whistleblower case. Plaintiffs have not met their burden of demonstrating that there is a widespread custom or ratification of excessive force among—as purported by BSO, *see* Def. Stat. Fact ¶ 4 (citing 2008 CALEA Report, ECF No. [129-3] at 4)—the largest fully accredited sheriff's office in the country. *See Thompson v. Sheriff, Pinellas Cty. FL*, 542 F. App'x 826, 829 (11th Cir. 2013) (holding that a plaintiff alleging deliberate indifference and ratification failed to present the requisite proof given that the sheriff's office had 900 deputies but plaintiff adduced evidence only with respect to one deputy and plaintiff did not challenge the existence and efficacy of the sheriff's written policies, procedures, and training).

Plaintiffs also cite to the report and deposition testimony of their expert, Dr. Kirkham, stating that BSO's actions and inactions have ratified and ensured the perpetuation of a culture of police misconduct within the agency—although the written policies were adequate, BSO created a *de facto*, unwritten custom and practice that essentially nullifies BSO's written policies. *See*

Kirkham Report, ECF No. [118-1] at 9 ("BSO effectively ratified and ensured the perpetuation of a culture of police misconduct within the agency."); Kirkham Depo., ECF No. [118-2] at 224. Courts have held, however, that an expert's report offering an opinion as to the ultimate issue is not sufficient to create a genuine issue of fact. *See Buckler v. Israel*, Case No. 13-cv-62074, slip op., at *8, n.3 (S.D. Fla. Jan. 28, 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (holding expert's conclusion that "the Police Department must have an unwritten policy of condoning excessive force because of the mere number of complaints previously filed against it, is insufficient to create a genuine issue of material fact on which a jury could reasonably find that such a policy exists")). Dr. Kirkham's review of the evidence and opinion as to the ultimate issue—whether or not BSO ratified alleged excessive force and misconduct—is not sufficient to survive summary judgment.

## IV. CONCLUSION

Plaintiffs have failed to present sufficient evidence of a widespread custom or unwritten policy or practice of ratification or deliberate indifference to excessive force and misconduct to support their *Monell* claims. *See Thompson*, 542 F. App'x at 829. Accordingly, Defendant BSO's Motion for Summary Judgment, ECF No. [119], is **GRANTED** as to Counts XIII and XVI of the SAC.

**DONE AND ORDERED** in Miami, Florida, this 11th day of July, 2016.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record